## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE GABRIEL TORRES-DURAN,

*Petitioner,*

v.

TODD BLANCHE, et al.,

*Respondents.*

CIVIL ACTION
NO. 26-3586

**Pappert, J.**                                                                      **June 30, 2026**

**MEMORANDUM**

The Government arrested and detained Jose Gabriel Torres-Duran for purportedly overstaying his visa by six years.  He filed a *habeas* petition challenging his detention and alleging the Government violated the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause.[1]  The Court denies the petition.

I

Torres-Duran, a native and citizen of Colombia, lawfully entered the United States in March of 2020 on a nonimmigrant B2 traveler visa, which expired six months later.  *See* (Pet. ¶ 1, Dkt. No. 1); (May 19, 2026 Form I-213 at 2, Gov't's Resp. in Opp'n Ex. A, Dkt. No. 12-1).  On May 18, 2026, ICE Officer Kapsopoulos arrested him for overstaying his visa and transported him to the Philadelphia Field Office.  (May 19, 2026 Form I-213 at 2.)  The Government filed a Notice to Appear with the immigration court the same day, starting removal proceedings against him.  (Pet. ¶ 22); (May 19, 2026 Form I-862, Gov't's Resp. in Opp'n Ex. B, Dkt. No. 12-2.)  The NTA was amended

---

[1]        Judge Padin in the District of New Jersey transferred the case to this district because Torres-Duran was processed and detained in Philadelphia.  (May 26, 2026 Ord. at 1, Dkt. No. 7.)

a week later and alleged Torres-Duran was removable under 8 U.S.C. § 1227(a)(1)(B)
for violating the terms of his visa.  (May 27, 2026 Form I-261, Gov't's Resp. in Opp'n Ex.
D, Dkt. No. 12-4.)

Unlike most recent *habeas* petitions in this district, the Government detained
Torres-Duran at the Philadelphia Federal Detention Center "[p]ursuant to the
authority contained in section 236 of the Immigration and Nationality Act," or 8 U.S.C.
§ 1226(a).[2]  *Compare* (May 18, 2026 Form I-286 at 1, Gov't's Resp. in Opp'n Ex. E,
Dkt. No. 12-5) *and* (June 1, 2026 Form I-286, Gov't's Resp. in Opp'n Ex. F, Dkt. No. 12-
6) *with Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov.
18, 2025) (collecting cases involving noncitizens detained under 8 U.S.C. § 1225).  The
day of his arrest, the Government provided him with a Form I-286 that stated he could
"request a review of this custody determination by an immigration judge," and Officer
Kapsopoulos read the contents to him in Spanish.  (May 18, 2026 Form I-286 at 2.)  For
unknown reasons, Torres-Duran didn't sign it.  (*Id.*)  He received a similar form—along
with the Spanish translation—nearly two weeks later, again informing him that an
immigration judge would review his detention upon request.  *See* (June 1, 2026 Form
I-286).  He "[r]efused to sign" the form, *see* (*id.*), and still has not requested a custody
determination.

## II

Under 28 U.S.C. § 2241, federal courts have jurisdiction to review the legality of
a noncitizen's detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  A petitioner is

---

[2]    Torres-Duran initially alleged he was detained under 8 U.S.C. § 1225, *see* (Pet. ¶¶ 3, 26, 30),
but now apparently acknowledges he is detained under § 1226(a), *see* (Pet'r's Reply at 7–9, Dkt.
No. 13).

entitled to relief if he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The petitioner bears the burden to show his detention is unlawful.  *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

III

A

The Government first contends the Court lacks jurisdiction under 8 U.S.C. § 1252(g), which states that "[e]xcept as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  That provision "is to be read narrowly and precisely to prevent review only of the three narrow discretionary decisions or actions referred to in the statute."  *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) (citation modified and omitted).

The INA does not strip the Court of jurisdiction because Torres-Duran never brought any claims arising from the discretionary decisions or actions specified in § 1252(g).  He only challenged "whether the government has statutory authority to detain [him] as it has," (Pet'r's Reply at 7), not "the discretionary *decision* to commence proceedings," *Garcia*, 553 F.3d at 724; *see also Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *3 (E.D. Pa. Nov. 14, 2025) (rejecting similar arguments under § 1252(g)); *Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *2 (E.D. Pa. May 14, 2026) (same).

3

The Government tries to distinguish this case because Torres-Duran "was placed into removal proceedings at the same time he was detained," making the two "inextricably intertwined." (Gov't's Resp. in Opp'n at 9.) That distinction is without a difference. Nowhere does the INA suggest the close timing of detention and removal proceedings can somehow "intertwine" the two, let alone strip a federal court of jurisdiction. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (noting the "strong presumption" favoring judicial review "can only be overcome by 'clear and convincing evidence' of congressional intent to preclude review" (citation omitted)). Construed "narrowly and precisely," § 1252(g) affords no basis for the Government's theory. *See Garcia*, 553 F.3d at 724; *Ubaid*, 2026 WL 1346670, at *2 (rejecting the same theory).

### B

Although the Court has jurisdiction to review the petition, Torres-Duran has not exhausted his administrative remedies. Petitioners "are ordinarily required to exhaust their administrative remedies before petitioning for a writ of *habeas corpus* pursuant to § 2241." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases). Exhaustion may be excused if an attempt to obtain relief would be futile. *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010). A futile argument is not the same, however, as one that would likely fail if it had been raised. *See Ubaid*, 2026 WL 1346670, at *3 (collecting cases).

Torres-Duran is detained under 8 U.S.C. § 1226(a), *see* (June 1, 2026 Form I-286), which provides that the Attorney General "may arrest and detain" a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United

4

States."  A noncitizen detained under that provision may request a bond redetermination hearing before an immigration judge, *see* 8 C.F.R. § 1236.1(d)(1), and appeal that decision to the Board of Immigration Appeals, *see id.* § 1236.1(d)(3); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018) (holding that the Attorney General "may release" noncitizens on "bond" or "conditional parole" except as provided in subsection (c)).

The Government provided Torres-Duran with two opportunities to "request review of this custody determination by an immigration judge," which Officer Kapsopoulos read to him in Spanish.  (May 18, 2026 Form I-286 at 2); (June 1, 2026 Form I-286.)  He never signed the first Form I-286, *see* (May 18, 2026 Form I-286 at 2), and "[r]efused to sign" the second, *see* (June 1, 2026 Form I-286).  Until he does so, "the merits of [his] claims that he is being held in violation of federal law are [not] ripe for review."  *Ubaid*, 2026 WL 1346670, at *3; *Doe v. Jamison*, No. 26-1906, 2026 WL 916568, at *4 n.36 (E.D. Pa. Mar. 31, 2026) (holding that due process claims are not ripe for review until and unless the petitioner fully exhausts the administrative process); *I.K. v. Jamison*, No. 26-3719 (E.D. Pa. June 9, 2026), Dkt. No. 10 (same).

C

Torres-Duran claims exhaustion does not bar his claims for three reasons, none of which apply.

1

He first argues the Court "has full discretion to excuse exhaustion" because it "is a judicially created doctrine."  (Pet'r's Reply at 5.)  Exhaustion is "a matter of sound judicial discretion" when not required by statute, *see Cerro Metal Prods. v. Marshall*,

620 F.2d 964, 970 (3d Cir. 1980) (footnotes omitted), and § 2241 has no such

requirement, *see, e.g.*, *Doe*, 2026 WL 916568, at \*3.  But federal courts should apply

exhaustion where it: (1) promotes administrative efficiency by "preventing premature

interference with the agency processes," (2) respects executive autonomy by allowing

the agency "to correct its own errors," (3) facilitates judicial review by affording courts

the benefit of the agency's expertise and experience and (4) serves judicial economy by

having the agency or other tribunal compile a factual record.  *See Cerro Metal Prods.*,

620 F.2d at 970 (footnotes omitted).

Exhaustion is appropriate here.  ICE detained Torres-Duran a month ago, (May

19, 2026 Form I-213 at 2), and an immigration judge has yet to review this case because

he has refused to sign the appropriate form or request a custody determination hearing,

*see* (June 1, 2026 Form I-286).  And this case is not similar to those where the

Government unlawfully detained noncitizens under § 1225 instead of § 1226.  *See, e.g.*,

*Quispe v. Rose*, 819 F. Supp. 3d 362, 369 (M.D. Pa. 2025) (excusing exhaustion because

"administrative review serves no practical purpose" where "immigration judges lack

authority to hear bond requests"); *Kashranov v. Jamison*, No. 25-5555, 2025 WL

3188399, at \*3 (E.D. Pa. Nov. 14, 2025) (same).

2

Torres-Duran also thinks the Government "has frustrated [his] ability to

exhaust" because he didn't sign the initial Form I-286.  *See* (Pet'r's Reply at 6).  He

likens his case to *Doe v. Jamison*, where exhaustion was excused based on the

Government's "willful or negligent" inaction.  *See* 2026 WL 916568, at \*3.

6

The facts in *Doe* are a far cry from those here.  Unlike Torres-Duran, the noncitizen in *Doe* twice requested a bond hearing with an immigration judge.  *See id.*, at *4.  The Government said it would provide the petitioner with such a hearing but never did so.  *Id.*  So the Court excused exhaustion because "there [was] no evidence that ICE or DHS made a record of or acted on the request [for a bond hearing]."  *Id.*  By contrast, Torres-Duran never requested a bond hearing even though he could have done so, twice.  (May 19, 2026 Form I-213 at 2); (June 1, 2026 Form I-286.)  Nor does he cite any evidence showing the Government acted willfully or negligently.[3]  *Cf. Doe*, 2026 WL 916568, at *3.

3

Finally, Torres-Duran believes exhaustion would have been futile because "the underlying legal issue is purely statutory."  (Pet'r's Reply at 7.)  It's not clear why that matters, much less how it relates to futility.  The implementing regulations to § 1226(a) provide him the relief he seeks.  *See* 8 C.F.R. § 1236.1(d).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

---

[3]    Torres-Duran conclusorily alleges, without any evidence, that he must have "[r]efused to sign" the amended Form I-286 because he "was contesting the terms of his detention from the moment of his arrest, not acquiescing in them."  (Pet'r's Reply at 6.)  Even if that were true, it still would not establish the Government acted as it did in *Doe*.  *See* 2026 WL 916568, at *3 (excusing exhaustion where the Government twice failed to provide a petitioner with a bond hearing).